J-S32042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALIK STEPHON H MANGRUM | : | |
| | : | |
| Appellant | : | No. 392 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 27, 2025
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001389-2024

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:             **FILED OCTOBER 30, 2025**

Malik Stephon H. Mangrum ("Appellant") appeals from the judgment of sentence entered in the Court of Common Pleas of Berks County after his two-day jury trial ended with guilty verdicts on charges related to his alleged participation in restraining and threatening at gunpoint an illicit drug customer indebted to him and his cohort. After careful consideration of Appellant's weight of the evidence claim, we affirm.

The trial court opinion aptly sets forth the facts and procedural history, as follows:

[**PROCEDURAL HISTORY:**]

After a two day trial, on December 6, 2024, the jury returned guilty verdicts [fn1] on Information Count 1, Persons Not to Possess, use, or Control a Firearm; Count 4 Unlawful Restraint; Count 5, Conspiracy (Unlawful Restraint); Count 6 Terroristic Threats Count

---

[*] Former Justice specially assigned to the Superior Court.

7, Conspiracy (Terroristic Threats); and Count 8, Possessing Instruments of Crime. [fn2] He was found not guilty of Count 2, Aggravated Assault and Count 9, Simple Assault. Defendant [(hereinafter "Appellant")] was sentenced to six-and-a-half (6 1/2) to fourteen (14) years.[fn3]

On March 7, 2025, a post sentence motion was filed raising challenges to the weight of the evidence.[fn4] The motion was denied without a hearing on March 11, 2025. Notice of Appeal was filed by counsel for the Appellant on March 21, 2025. . . . On March 24, 20256, the [trial court] issued an order for the filing of Appellant's 1925(b) statement. On April 2, 2025, the trial court received the Concise Statement of Matters Complained of on Appeal.

---

Fn1     The Criminal Information does not correspond to the jury verdict slip as judgment of Acquittal was granted as to Count 3 Conspiracy to Aggravated Assault, 18 Pa.C.S.A [§] 903(a)(1), [18 Pa.C.S.A. [§] 2702(a)(4)] and Count 10 Conspiracy to Simple Assault, 18 Pa.C.S.A. 903(a)(1) [18 Pa.C.S.A. § 2701(a)(1)]. The Counts referenced in the [Trial Court Opinion] correspond to the Criminal Information.

Fn2     Count 1, Persons Not to Possess, Use, or Control a Firearm 18 Pa.C.S.A. § 6105(a)(1); Count 4, Unlawful Restraint, 18 Pa.C.S.A. § 2902(a)(1); Count 5, Conspiracy (Unlawful Restraint)18 Pa.C.S.A. § 903(a)(1) [18 Pa.C.S.A. § 903(a)(1) [18 Pa.C.S.A. § 2902(a)(1)]; Count 6 Terroristic Threats, 18 Pa.C.S.A. § 2706(a)(1); Count 7, Conspiracy (Terroristic Threats) 18 Pa. C.S.A. § 903(a)(1) [18 Pa.C.S.A. § 2706(a)(1)]; Count 8, Possessing Instruments of Crime, 18 Pa.C.S.A. § 907(a).

Fn3     Count 1 . . . six (6) to twelve (12) years; Count 4 . . . six (6) to twenty-four (24) months imposed consecutively to Count 1; Count 5 . . . six (6) to twenty-four (24) months imposed concurrently to Count 4; Count 6 . . . six (6) to twenty-four (24) months imposed concurrently to Count 4; Count 7 . . . six (6) to twenty-four (24) months imposed concurrently to Count 4; [and,]

> Count 8 . . . six (6) to twenty-four (24) months imposed concurrently to Count 4.
>
> Fn4    In the post sentence motion, counsel makes reference to sufficiency when it indicated the importance of the primary witness' testimony and without it, the evidence was **wholly insufficient** (emphasis added [in TCO]) to support a conviction.  However, that is the only reference to sufficiency and the focus was the weight of the evidence.

The Appellant alleges the following error:

1. Whether the Trial Court abused its discretion and erred in denying Appellant's post sentence motion where it is clear from the record that the verdict issued was rendered unreliable, tainted, questionable, and contrary to the weight of the evidence by the trial testimony of Commonwealth witness, Daniel Szymanski, where his testimony was replete with inconsistencies, lies, half-truths; that he admitted to being heavily under the influence during the events that occurred and he was coming off a several day crack-cocaine binge where he testified that he had been awake for approximately five (5) straight days; and finally, that he attempted to bribe the Appellant for a quantity of crack cocaine in exchange for refusing to testify against the Appellant.

Appellant's Concise Statement of Appeal, April 2, 2025.

**FACTS:**

On February 17, 2024, in the early morning hours, Daniel Szymanski was driven by his drug dealer, the Appellant, from Pottstown to the Econo Lodge hotel in Amity Township, Berks County, Pennsylvania. [Szymanski] had been supplied with drugs by the Appellant for months.  Mr. Szymanski checked into the hotel.  While in the hotel, he engaged in the use of controlled substances.  Later in the day, Appellant picked up Mr. Szymanski. They drove around while waiting for a transmission of money from Mr. Szymanski's mother, which was the usual source of Mr.

Szymanski's money for drug purchases. The money was to be used to purchase drugs.

Mr. Szymanski gave the Appellant a key to the hotel room so he could come and go. They met up with a female and a man named Joshua Walker at some point in Pottstown and they all went together to the hotel. Mr. Szymanski and Mr. Walker dropped off the Appellant and the woman at the hotel. Mr. Szymanski and Mr. Walker returned to the hotel at about midnight. Appellant and the woman came downstairs and left with Mr. Walker. Mr. Szymanski returned to his room.

At some point between 2 a.m. and 4 a.m. on February 18, 2024, Mr. Szymanski woke up to a sharp pain to his head and noticed, in addition to the pain, that he was bleeding. Mr. Walker was standing by the bed. Appellant was present. They began demanding money from Mr. Szymanski and making threats. At the time, Mr. Szymanski owed Mr. Walker approximately $300-$400. There were various money exchanges between Mr. Szymanski and Appellant for drug purchases and Appellant believed he was owed approximately $2,000 at that time as well.

Over the course of approximately the next one to two hours, both Appellant and Mr. Walker were seen with a gun and made additional threats including shooting (a.k.a. "cooking him") and potentially setting the hotel room on fire. Appellant pointed the gun at Mr. Szymanski and asked him if he realized how big of a hole the gun could put in him. Appellant had Mr. Szymanski unlock his phone and was scrolling through it. Appellant went into his wallet and took Mr. Szymanski's PNC bank card.

At some point, Mr. Szymanski was returned his phone so he could attempt to get money from his father. Appellant left the room, purportedly to move his van. Mr. Szymanski took advantage of the return of his phone to text his (ex)girlfriend Melinda, who then contacted the police to go to Econo Lodge Room 220.

The police arrived and knocked on the door to the hotel room. Their arrival was hours after Mr. Szymanski had been awoken by Mr. Walker and Appellant. Hearing the police knocks, Mr. Walker pretended to be asleep, and Appellant grabbed the backpack that contained his gun and ran into the bedroom and returned. Mr. Symanski was directed to open the door.

The police directed all three to get against the wall. Mr. Szymanski was taken outside to speak to Officer Devlin. Originally, he told Officer Devlin his injury was caused by a fall because he was still in the sight line of the other two men. Once he was moved out of view, he told the police about the guns. Two handguns, one being a ghost gun with an extended magazine, were seized from the hotel room. It was established by stipulation that Appellant had a prior record that prevented him from having possession of a weapon. Appellant was also found to be in possession of Mr. Szymanski's bank card.

Trial Court Opinion, 5/2/25, at 1-4.

Consistent with Appellant's Rule 1925(b) Concise Statement, his appellate brief presents the following Statement of Questions Involved:

Whether the trial court erred in denying the Post Sentence Motion challenging the weight of the evidence where it was clear from the record that the verdict issued was rendered unreliable, tainted, questionable, and contrary to the weight of the evidence by the trial testimony of the alleged victim, Daniel Szymanski, where his testimony was replete with inconsistencies, lies, half-truths, and utterly without support or proof to such an extent as to render the entirety of his testimony incredible.

Brief of Appellant, at 5.

Claims addressing the credibility of a victim's testimony challenge the weight of the evidence. *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006) (stating, "[a] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed" (internal citations and quotations omitted)). When considering a challenge to the weight of the evidence, our standard of review is as follows:

The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support.

> Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017) (quotation marks omitted).

"[A]n abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the [trial] court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Loughman*, 314 A.3d 569, 572 (Pa. Super. 2024) (quotation marks and citations omitted). "In order for a defendant to prevail on a challenge to the weight of the evidence, 'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. Talbert*, 129 A.3d 536, 546 (Pa. Super. 2015) (quoting *Commonwealth v. Sullivan*, 820 A.2d 795, 806 (Pa. Super. 2003)).

Because a trial court has had the opportunity to hear and see the evidence presented, an appellate court reviewing a weight of the evidence claim will give the gravest consideration to the findings and reasons advanced by the trial court, which makes the trial court's denial of a motion "based on a weight of the evidence claim . . . the least assailable of its rulings." *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008); *Commonwealth v. Bright*, 234 A.3d 744, 749 (Pa. Super. 2020).

Appellant argues that his convictions were against the weight of the evidence because they were based solely on victim Szymanski's "wholly unreliable" testimony, which "cannot, on its own, support [Appellant's] conviction." Brief of Appellant, at 13. Undisputed evidence of both Szymanski's indebtedness to Appellant and his debilitating drug habit are offered as motive and incapacity-based grounds on which to discard the jury's verdict. Guided by our standards of review, we find Appellant's argument unavailing.

Specifically, Appellant relies heavily on Szymanski's testimony admitting he was using crack cocaine at the time and had not slept during the several weeks preceding the events in question as necessarily implicating his ability to recollect events accurately. N.T., 12/5/24, at 99, 119-121, 152. Moreover, Appellant points to Szymanski's inconsistent report of his injuries to law enforcement first responders who arrived at the hotel room—where he initially attributed his visible head injuries to an accidental fall only to amend that statement less than one minute later by accusing Appellant and Mr. Walker of

assaulting him—as additional evidence impeaching both his clarity of thought and veracity.

The Commonwealth counters that Szymanski was in recovery from his drug addictions at the time of trial, exhibited clear recollection of events as a witness, and explained to the jury that he gave conflicting answers about the cause of his injuries because he did not feel safe accusing Appellant and Mr. Walker until police removed him from their company. Brief of Appellee, at 7; N.T. at 115. Moreover, the Commonwealth emphasizes, the jury viewed Szymanski's responses to vigorous cross-examination emphasizing facts meant to impeach his credibility, and it chose to credit his testimony, nevertheless.

Furthermore, the Commonwealth directs us to evidence establishing that the prosecution was not wholly dependent on Szymanski's eyewitness testimony. Officer Brian Devlin of the Amity Township Police Department provided testimony connecting Appellant with a backpack containing guns and various drug paraphernalia typically used for "cutting up a product . . . repackaging." N.T. at 195. Specifically, the officer identified Appellant as the masked man depicted in the Econo Lodge surveillance video carrying the backpack and entering the motel room in question. N.T. at 198. Supporting the identification was the officer's testimony that Appellant was arrested wearing the same clothes as worn by the man depicted in the video, the backpack contained children's clothing and Appellant is a father of two young children, and the mask worn by Appellant in the video was also found in the

backpack. N.T. at 193-94, 198. Such evidence, the Commonwealth contends, both corroborated Szymanski's account and independently incriminated Appellant.

A jury is responsible for passing upon the credibility of the witnesses, resolving contradictory testimony, and weighing the evidence. *Bright*, 234 at 749; *Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa. Super. 2019). In carrying out this duty, the jury "is free to believe all, part or none" of the evidence presented at trial. *Roane*, 204 A.3d at 1001 (citation omitted). Therefore, as discussed *supra*, the trial court below was permitted to grant Appellant a new trial on his weight of the evidence claim only if it established that the verdict was "so contrary to the evidence as to shock one's sense of justice."

Our review of the trial court's exercise of discretion in denying Appellant post-trial relief on his weight of the evidence claim discloses no abuse of discretion. As the trial court reasonably observes, the jury learned about Szymanski's drug addiction, his indebtedness to Appellant at the relevant time, and his attempt to use his status as a prospective Commonwealth witness to acquire more drugs from Appellant's girlfriend by promising in return to become unavailable for the preliminary hearing and trial. It also heard zealous argument from defense counsel that it should reject his incriminating testimony as unreliable. Nevertheless, it also received ample incriminating evidence that, on balance, supported the verdicts on each charge. *See* Trial Court Opinion at 5-6. Given this record, we discern no basis

on which to overturn Appellant's conviction and grant him a new trial. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/30/2025